Our next case is TRUSTID, Inc. v. Next Caller, 2022-1433. We're reading when you are, Mr. Milken. Thank you, Your Honor. May it please the Court. The District Court should not have taken the extraordinary step of overturning the jury's verdict on TRUSTID's false advertising claim. That claim centers on something called IVR containment, which is a measure of a call center's ability to resolve calls with an automated system instead of them having to go to a live agent. The evidence showed that IVR containment is vitally important for call centers, and the reason is simple. As Next Caller's CEO agreed, it saves them lots of money. A small increase in containment can save a call center millions. And Next Caller's own customers testified at trial that IVR containment was an important factor in their purchasing decisions. What if we were to read the customer testimony as saying, as a general matter, IVR containment success rates are important for purposes of IVR containment. But that's not why we bought Next Caller's VeriCall. We bought it purely for authentication purposes. So what if we were to read that testimony in that way from people like BBVA and Comcast? Then there would be an issue with respect to materiality, the materiality element for your claim, because there would be an absence of evidence that any customer actually relied on this containment false statement. Because at least the testimony that you got from the customers that you deposed, they were just looking at the defendant's product for authentication purposes only. So, Your Honor, I disagree that that would be an issue for us on materiality. And the reason is because the case law is very explicit that when it comes to materiality, all you need to show is that the factor is something that is likely to influence purchasing decisions. You don't have to show that it actually did influence purchasing decisions. And the Cashmere decision is very explicit. Cashmere, is that a Third Circuit case? No, that's a First Circuit case. And we're dealing with Third Circuit law, right? Correct. But the Third Circuit... So what about the Parkway Baking case? Has that case ever been overturned? Parkway Baking has not been overturned. So Parkway Baking is still good law? 1958 Third Circuit opinion. Yes, Parkway Baking is still good law. And then if I read Parkway Baking as requiring some evidence from the plaintiff to sustain this kind of a claim, to have actual consumer reliance, then isn't that consistent with the questions that I'm asking about the absence of any evidence that anybody, whether it's BBVA or Comcast, actually relied on this false statement as a contributing factor in its choice in buying this VeriCall thing? If you read Parkway Baking to require actual consumer reliance, I would submit we still win for two reasons. The first reason is because we submitted circumstantial evidence that customers did rely on the statement. The reason that NextCaller wanted to include this made-up figure in their marketing materials is because NextCaller thought it was a very important factor for customers in their purchasing decisions. The customers confirmed that was the case. NextCaller sent this statement directly to one of its potential customers, Comcast, as part of a sales pitch in a PowerPoint presentation. And Comcast thereafter started purchasing VeriCall. So we'd submit that that's sufficient circumstantial evidence of actual reliance and injury. However, even if you disagree with me about that, we have an independent theory of why the jury's verdict was supported, and that's a profit disgorgement theory. Under the Third Circuit's Williamson-Dickey case, which actually precedes Parkway Baking and is still good law, if a plaintiff shows a willful violation of the Lanham Act, which we did here and the jury found as much, then the plaintiff is entitled to obtain disgorgement of the defendant's profits. And in obtaining disgorgement, all the plaintiff must show, and the statute, Section 1117, is very clear about this, all the plaintiff must show is the defendant's revenues from the product in question. We did that here to the tune of over $15 million. The burden then, under the statute, shifts to the defendant to show that they have any applicable costs that should be deducted from that revenue figure, or that the revenue was not actually derived from the false statements at issue. And the jury could reasonably found that NextCaller did not meet its burden to show that all $15 million of its revenue was not actually profit as a result of the false statement, because the only testimony they offered on this point was their CEO's self-serving testimony that, oh, we never made a profit because of all the litigation expenses associated with this case. So I think that the disgorgement theory is sort of a particularly straightforward way to affirm the jury's verdict, because NextCaller really has no response to the Williamson-Dickey line of authority. If you look at their red brief, and this is at pages 44 to 45, they spend one sentence on Williamson-Dickey and they make two points. The first point is that Williamson-Dickey had to do with trademark infringement as opposed to false advertising. That's true, but that's not a distinction because it's the same statute that applies to both causes of action, and the same damages provision that applies to both causes of action, that explicitly provides for a disgorgement remedy upon a plaintiff showing of the defendant's revenues. The second thing they say is, oh, well, there can't be a disgorgement of profits without proof of profits. But again, this ignores the explicit burden-shifting framework set forth in the statute, under which our only burden is to induce evidence of revenues, and then the onus to show applicable costs or deductions, or that the revenues weren't actually derived from the false statement, then falls to them. So I think that if this court is sort of not inclined to get into the dispute about what Parkway baking means, then I think Williamson-Dickey and disgorgement is a straightforward way to resolve the false advertising claim. What did the district court say about this? The district court's view was that Trusted had failed to show actual consumer reliance on the allegedly false statements. And in the court's view, that was required under Parkway baking. And then the court essentially said, well, that necessarily frustrates your ability to show materiality and damages as well, because you haven't shown any consumer reliance. I think that that was sort of a separate error that the court kind of collapsed all three of those elements into one. But again, I don't think if you decide on the disgorgement rationale, I don't think that's an issue that this court has to get into. And this Williamson-Dickey case that you rely on for disgorgement, wasn't that a trademark infringement case that analyzed disgorgement after finding the infringement? And isn't that a basis for saying it wouldn't be applicable? I'm sorry, could you repeat the last part of your question? Wasn't it a case that was a trademark case? It was a trademark case. To decide to analyze engorgement only after finding the infringement. Correct. And isn't that a basis for saying that that would not necessarily be applicable? I disagree, Your Honor, because here we have a finding of a willfully, literally false statement, which is also a violation of the Lanham Act because it prohibits both trademark infringement and false advertising. And so I think this case is on all fours with Williamson-Dickey in that respect. Getting back to Parkway baking, I mean, when this disgorgement theory goes to the amount of damages, but isn't there still a threshold question before you can get to this damages question? First showing a right to damages, and then that puts you back in the same place of having to establish reliance? I don't think so, Your Honor, because the point of... So Williamson-Dickey is applying 1117, which is the damages provision of the Lanham Act. The Lanham Act sets forth in the alternative different measures of damages that a plaintiff can obtain. You can get diverted profits, you can get loss of goodwill, or you can get the defendant's profits. And Williamson-Dickey says explicitly, even if you don't have enough evidence to show actual confusion, which is the standard when you're talking about the trademark infringement prong of the Lanham Act, even if you're not able to show actual confusion, that's not going to defeat an accounting, which is what Williamson-Dickey called the disgorgement remedy. And so, no, I don't think that we get back into that problem with Parkway baking. If we show willful false advertising under the Lanham Act, that's sufficient under Williamson-Dickey to allow us to recover the defendant's profits upon a showing of the defendant's revenues, which we made. And there's no need, it's not incumbent upon you to show that the gains were somehow attributable to the false statements? That is their burden, to show that the profits were not attributable to the false statement. And again, the statute says this explicitly. You want to spend a minute or two on infringement? Certainly, Your Honor. I'll start, and given the time, likely end with the before the incoming call is answered issue, because that is common to both patents. Next caller's non-infringement arguments on this limitation. Transparently add a limitation to the claim. The claims require that the analysis be done before the incoming call is answered. Next caller reads them to say before the incoming call is answered by the IVR. If next caller wanted to construe the claim that narrowly, then the time to do so was before the district court at claim construction. But instead, next caller agreed to the broad constructions of call, meaning any connection over telecommunications or information services network, and is answered, actually or virtually goes off the hook, that the district court adopted. But then it argued to the jury that it doesn't infringe because it doesn't meet, because VeriCall doesn't meet a limitation that these claims simply don't require. I think this case is on all fours with the MOBA case that we cited in our brief. The accused infringer's non-infringement position depends on adding a limitation to the claim construction that simply is not there, and we're entitled to protect the original breadth of that claim construction from post facto imposition of an additional limitation. Was the word incoming ever construed? The word incoming was not construed. And so I guess that's kind of the real rub here, was trying to figure out whether the so-called second call can still constitute an incoming call. Certainly. So if you look at the patent, Judge Chin, the patent consistently frames the call from the perspective of... What I'm wondering is, isn't that a fact question for the jury to then decide here, okay, we all know that when the call comes into the computer, that's an incoming call. But then when the call gets routed to a human agent, is it still an incoming call, or is it a different call? I would say, Your Honor, that that's not a fact question. That's a question about the scope of the claims, and I'll explain why using NextCaller's own arguments. If you take a look at Appendix 4002, this is the summary judgment briefing on this patent. NextCaller explicitly framed this dispute as a dispute about claim construction. They said, the court should resolve the claim construction dispute, finding that the claims require the analysis occur before the call is first answered. And then a little bit later, they say, properly construed, the claims require the analysis to be performed before the first instance where the call goes off the hook. So NextCaller itself has consistently framed this dispute about whether subsequent calls after the initial one count as an incoming call is a dispute of claim construction. We agree it's a claim construction issue, and we think that we have the better of the argument. And if that claim construction is applied to the undisputed facts, then a finding of infringement necessarily falls off. Was there some kind of O2 micro issue here? I don't believe there's an O2 micro issue because neither party argued that additional construct, well, NextCaller argued here that additional construction was necessary, but then later said, no, we're fine with the construction you've already entered, District Court. We were also fine with the construction that the District Court entered because we think it's A, correct, and B, resolves the dispute in our favor as a matter of law. So I think that makes it a little bit different from O2 micro in that regard where one of the parties asked for additional claim construction but was denied it by the District Court. Counsel, your time has mostly expired, but we'll give you three minutes to rebuttal. Thank you. Ms. Columbia. Good morning. May it please the Court. Your Honors, if appropriate, I'll start with the patent issues that we finished with and then move on to the false advertising. The issue is not an issue of claim construction. Both parties stipulated to the constructions of is answered and call. The Court invited them at the summary judgment stage to offer more claim construction if they wanted it. Both parties said no. It's important to note that summary judgment was NextCaller's summary judgment motion for a finding of non-infringement based on the plain language of the term. NextCaller made that same motion at the motion eliminate stage. The Court again said it was not an issue of claim construction but rather an issue of fact to be put to the jury. The term incoming was never construed and therefore was subject to an amenable plain and ordinary meaning, which the jury is presumed to have applied and to have found no infringement. In that regard, it is not like the MOBA v. Diamond case cited by my brethren, but rather like the E plus versus Lawson case in which the claim determined in that case had not been construed and the Court found that the jury was free to apply a plain and ordinary meaning of a plain and ordinary term. So based on that and based on hearing competing testimony, the jury is presumed to have found that the incoming call was the call into the computer IVR system, which is answered before the NextCaller system engages in its analysis. If there are no questions on that, I'll turn to false advertising. On false advertising, the Court found in her finding of J-Mal three separate and independent reasons why the jury's verdict should be overturned. First was... Can you just, just because time is short, can you just go to what your friend spent most of his time on, which is the disgorgement and his analysis of Third Circuit case law, which would require that they don't have to make a showing of causal connection or reliance showing in that regard? Yes, Your Honor, that reading would read the words out of the Lanham Act. That is that the harm must be attributable to the false statement. And what about Williamson-Dickey? Williamson-Dickey is a trademark infringement case. Williamson-Dickey itself, if I could just have a moment, Your Honor, refers to and cites back to the Century Distilling case, which cites back to the Mishawaka rubber case, which is some of our oldest trademark infringement law, which explains the policy rationale for disgorgement in a trademark infringement case where the trademark infringer is presumed to be trading on the goodwill and the value built up by the competitor. Here we have a false advertising claim where the Lanham Act clearly requires proof in the Third Circuit of actual deception, as well as harm attributable to the false statement. And here the lower court, according to her footnote, scrubbed the record herself and found no evidence of actual deception, either circumstantial or otherwise. Well, what about, let's, I don't want to focus on the actual deception because the confusion makes me crazy. So let's focus on reliance, as Judge Chen said at the beginning. On reliance, why do you need likelihood into the reliance standard? And if not, why shouldn't we need likelihood? Because it doesn't seem that the district court read likelihood into the standard, right? That's correct, Your Honor, because under Parkway baking where the only remedy sought is damages for past activity, the likelihood is not the question. The question is, did it actually deceive anyone? Did they actually rely on this false statement? Well, does it matter that in the context here, we had all the players as witnesses and everybody was saying what they did? I mean, it seems like the vast majority of the sales in the relevant period were made by the cast of characters whose analysis was given to the jury, right? Correct. Correct, Your Honor. We have a somewhat unusual case and I think it's very important to the, to the judge's decision and her decision to overturn the jury verdict. We had exactly four customers. In each instance, the jury heard evidence that the IVR statement, heard no evidence that the IVR statement influenced their decision. Zero evidence in that direction. And in the other direction, we have Capital One who signed their contracts months before the statement was ever made. So obviously they didn't rely on it. We have Comcast who testified in to the jury that they don't use Nextcaller in the IVR. We have BBVA, which testified they don't use Nextcaller in the IVR and we have Dish Network, which was the only customer actually asked about these marketing materials. And that witness said, we don't really pay attention to marketing materials. We pay attention to actual data. We run our own tests. But the other side relies on, and I think fairly, that the one statement that they made, that BBVA made about how absolutely that someone might,  and the answer was absolutely. I understood your Honor. It may be something that in general is of interest, but in these particular instances, there's no, there's no evidence that BBVA actually used it in the IVR. There's no evidence that it relied on the statement. And for the other three, there's affirmative testimony from two of them that they didn't use it in the IVR. And there's evidence from the third that it signed his contract months before the statement was ever made. So it would be like me saying that gas mileage is important to me as a general mom and apple pie, but I might choose to buy my car having nothing to do with the gas mileage of the car. That's probably a poor analogy and I shouldn't do analogies on my feet. But the fact that something might be of general interest doesn't change that we had actual, we don't need circumstantial evidence. We have actual evidence from these customers that they did not rely on the IVR statement in making their purchases. And interestingly they weren't asked in their depositions. So there was every opportunity to put the statements in front of them and ask them, did this influence your decision-making? Those questions were not asked for whatever reasons, but the evidence the jury had was the absence of any reliance and the fact that they did not use this device in the IVR. So to get back to the Williams and Dickey angle, I'm hearing the other side say they don't have to prove reliance. They don't have to prove materiality. All they have to prove is that number one, the statement was false and number two, it was willfully made and that's enough to, entitle them to disgorgement. So is that your understanding of the law of that? You don't have to prove all the classic requirements of either trademark infringement or deceptive marketing. No, Your Honor. There's one sentence in Williams and Dickey, which says the absence of customer confusion in a very much a consumer customer market does not preclude an accounting. That's the extent of the statement in Williams and Dickey. It was decided in the same year as Parkway baking within a few months. So what does that mean if it says, well, in a trademark infringement case, you don't have to worry about confusion. You don't have to prove the likelihood of confusion element. Yeah, Your Honor. That's the case goes back and relies on sentry distilling and then on the Chikawa case. Those were both in our brief. It ties back into the policy of trademark infringement law and the presumption that if you're trading on someone else's trademark, you're engaged in the type of behavior for which an accounting may be required. Here we have same statute. I concede that, but a different act, a false advertising act that caused no harm to trusted whatsoever. And as Parkway baking pointed out, the Lanham Act was not entitled to be a windfall for competitors. It's intended to protect consumers and customers. And obviously if, if in making a false statement, you harm your competitor, then there's a right to recover. But to say you just get disgorgement in this situation where there's no causation, no reliance and no harm would be to read those elements out of the Lanham Act for false advertising. If there are no other questions, sit down. Thank you, counsel. No one ever loses points by surrendering time. Mr. Milliken has three minutes for rebuttal. Thank you, Your Honor. I'd like to make three brief points in rebuttal to on false advertising, one on infringement. First as to the disgorgement theory of false advertising, Williamson Dickey is extremely clear and I'd like to read from the case here. This is at 251 F seconds, 924 at 927. And the court says the mere fact that there is no showing by the plaintiff of actual confusion of source will not defeat an accounting. And then it goes on to say that the burden shifts to the defendant to show that the profits were not actually made as a result of the infringement. That is exactly analogous to the situation that we have here. And one thing, Judge Chin, that you said that I just wanted to clarify, we do agree that we need to show materiality no matter what, but the evidence of materiality here is overwhelming. And you can go, for example, to Appendix 6531, the testimony of the BBVA representative. The question was, if one vendor has better IVR containment metric, that might be something BBVA would consider when selecting a vendor? Answer, absolutely. At Appendix 6540, the Comcast representative... But there's another part of that colloquy, right? Which said we're not using this vericall for containment purposes. We're just using it for authentication. That they ultimately decided not to use it to drive IVR authentication. But that does not prevent the jury from making the common sense inference that, given that this was something that was really important to them, that could well have been a major factor in BBVA purchasing the product in the first instance. And I think my friend's gas mileage analogy is... Nobody said it was really important to them. It said that might be something that BBVA would consider when selecting a vendor. And the answer was, absolutely. And then the Comcast representative testified similarly that IVR containment was, quote, absolutely something that Comcast wants to increase or maximize because it saves phone calls to agents that are more expensive. The question is, were these people in the market for doing something on containment or were they doing something on authentication? And it appears quite clearly from their testimony that these two parties were looking for an authentication service. And that's what vericall does. It's verifying whether the caller is real or spoofing. Well, correct. But the point your honor is that authentication technologies can be used to drive IVR containment. That's exactly what Nextcaller was trying to convey when it said, I want to jack that stat or make up a number like 8% to compete with Trusted. The point was we want to show customers that they can use our authentication technology in order to increase their IVR containment. That's exactly... And they did it to try and compete better with Trusted. That's exactly the kind of conduct that the Lanham Act is supposed to prevent. Do we have any evidence from any customers that were using vericall in the case? The testimony from the customers who testified at trial was that they didn't end up using vericall to drive IVR containment. However, they also testified very clearly that IVR containment was something that they would consider in making purchasing decisions. And the case law is clear that that's all you need for the materiality showing. You just have to show that it's something that is likely to influence purchasing. Go ahead. Now, even when we have the sales or the revenue figures to demonstrate that these were the principle, vast majority of revenue would derive from the people we heard from. That's correct, Your Honor. So if they... I don't understand where likelihood works in. If they've testified, they didn't rely on it. But they've testified that it was something that was important, would have been important to their purchasing decisions. And that is all we need to show to meet our burden on the materiality element. There is a separate question about... Isn't there a reliance component to the materiality? And isn't that, and wasn't it clear that they did not rely on this deception with regard to their purchasing decision? No, Your Honor. The way that the case law has evolved with this five factor test for false advertising, the extent of the reliance goes to the deception element. That's my friend on the other side's position is that in showing actual deception, you have to show that customers actually relied on the false statement. We disagree with that, but even if they're right, then we still have our entitlement to a disgorgement remedy because there all we have to show is a willfully false statement of material fact, which we did. And then we have to present evidence of their revenues, which we also did.  counsel. We have both arguments and the case is submitted. Thank you, Your Honor.